IN THE

# SUPREME COURT

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, NOVEMBER TERM, 1922, AND MAY AND
NOVEMBER TERMS, 1923, IN THE ONE HUNDRED
EIGHTH YEAR OF THE STATE.

---

### MITCHELL ET AL. *v.* STATE OF INDIANA.

[No. 23,969. Filed March 16, 1923.]

1. HOMICIDE.— *Evidence.*— *Sufficiency.*— In a prosecution for murder in which the evidence was circumstantial, *held* that the judgment of conviction would not be overturned on the ground of insufficiency of the evidence. p. 3.

2. HOMICIDE. — *Motive.* — *Instructions.* — *Invading Province of Jury.*—In a prosecution for murder, where there is no direct evidence, an instruction that, where the evidence is purely circumstantial, the question of the presence or the absence of motive becomes of greater importance *held* improper as invading the province of the jury. p. 7.

3. CRIMINAL LAW.— *Burden of Proof.*— *Instructions.*— *Verbal Inaccuracies.*— In a prosecution for murder, an instruction that, while the burden is on the state to prove every material averment in the indictment beyond a reasonable doubt, it was not necessary to prove such averments by direct and positive evidence, but such facts might be inferred from circumstances shown by the evidence, if "such inferences are warranted from such circumstances, and the evidence establishing such inferences satisfies the jury beyond a reasonable doubt," *held* not misleading, though verbally inaccurate. p. 9.

4. CRIMINAL LAW.—*Circumstantial Evidence.*—*Sufficiency.*—*Instructions.*—In a prosecution for murder, where the evidence was circumstantial, the refusal of an instruction that the circumstances connecting defendants with the crime must be consistent with the hypothesis that the crime could not have

been committed by any person other than defendants, was error, where the court in its instructions on the question of circumstantial evidence stated the law on that subject as strongly as possible in favor of the force of such evidence. p. 12.

5. CRIMINAL LAW.— *Trial.— Misleading Instructions.— Refusal.* —It is proper to refuse requested instructions which are misleading. p. 12.

6. CRIMINAL LAW.— *Evidence.— Declarations of Joint Defendants.—Admissibility.—*The acts and declarations of each of those engaged in a criminal enterprise are competent against all participating, but when the crime is consummated, after declarations and admissions are not competent against anybody except the declarant; and when such after declarations and admissions are admitted, the jury should be instructed that they are not to be considered with reference to declarant's codefendants. p. 14.

7. CRIMINAL LAW.—*Evidence.—Admission.—By Joint Defendant after Commission of Crime.—Admissibility against Codefendants.—*In a prosecution of three brothers jointly indicted for murder, where it appeared that one of the defendants was in another state at the time of the crime, a statement by such defendant, made after the commission of the crime, that he wrote a letter to one of his codefendants not to kill deceased, but that when he got home he would do it himself, while competent against declarant, was not competent as against his codefendants. p. 14.

8. CRIMINAL LAW.—*Evidence.—Statement of Joint Defendant as to Receipt of Letter from Codefendant.—*In a prosecution of three brothers jointly indicted for murder, where it appeared that one of the defendants was in another state when the crime was committed, a statement by him that he had received a letter from one of his codefendants that he was going to shoot deceased, was not competent, the letter itself being the best evidence, in the absence of a sufficient excuse for failure to produce it. p. 14.

9. CRIMINAL LAW.— *Trial.— Argument before Jury.— Misconduct of Counsel.—*In a prosecution for murder, where the evidence was circumstantial and showed the existence of certain footprints a quarter of a mile away from the place where the crime was committed, a statement by counsel for the state, while commenting on the subject of such footprints, "Do either one of the defendants now have the measurement put upon their shoes to show how large they are?" *held* misconduct, since defendants did not have to submit their persons to measurement. p. 15.

From Crawford Circuit Court; *William Ridley*, Judge.

Prosecution by the State of Indiana against Calvin Mitchell and others. From a judgment of conviction, the defendants appeal. *Reversed.*

*R. W. Armstrong, Henry W. Mock, Clyde H. Jones* and *M. B. Lairy*, for appellants.

*U. S. Lesh*, Attorney-General, and *Mrs. Edward Franklin White*, Deputy Attorney-General, for the State.

TOWNSEND, J.—Calvin, Lon and Arthur Mitchell, brothers, were jointly indicted for the murder of one John Lawrence. Calvin and Lon were convicted, sentenced to life imprisonment, and Arthur was acquitted.

The error assigned is the overruling of appellants' motion for a new trial. The first question is the sufficiency of the evidence. It is established by direct evidence that John Lawrence was shot on September 12, 1920, at about 7 o'clock in the morning, by someone who concealed himself behind a rock which projected three or four feet above the ground, about 120 yards up the hillside from the back porch of the residence of Lawrence's brother-in-law. Lawrence and his brother-in-law were returning from the barn where they had gone to feed the stock. Lawrence's wife was standing on the back porch at the time that Lawrence approached the porch, and as he reached the porch the shot was fired and his wife saw the smoke of the powder arise in the vicinity of the rock. A 45-caliber bullet, supposed to be the one that passed through the body of Lawrence, was picked up in a cornfield some distance beyond the point where Lawrence stood. The bullet passed through Lawrence's heart and he died instantly. No witness saw anyone back of this rock on the hillside. No witness saw any of the defendants in the vicinity that morning. The evidence as to

who planned and executed this crime is all circumstantial. The grass and weeds back of the rock were tramped down as though someone had been there for some time. The twigs of the brush in front of the rock had been broken off or cut away to give a clear view. About one-quarter of a mile from the rock the print of a man's shoe or boot was discovered in the mud. The evidence shows that about 2 o'clock that morning there had been a hard rain storm in that vicinity, so that where the ground was not covered with vegetation there was mud. This foot print was found intermittently from this point to within about a quarter of a mile of Calvin Mitchell's residence. It is indicated by the evidence that the distance from the rock to the Calvin Mitchell residence, taking the course of the foot prints as they appeared intermittently, is about one mile and three-quarters. The evidence shows that the sheriff of Crawford county, together with others who had blood hounds, followed this human track, and the investigation of the situation resulted in the arrest of Lon and Calvin Mitchell on the following day. At the time of the arrest there was found in the Mitchell home an army rifle of the type used in the Spanish-American War, from the magazine of which cartridges were taken. The evidence shows that the bullet picked up in the cornfield, at a point indicated by the range from the rock, weighed one grain less, apothecaries' weight, than a bullet extracted from a cartridge taken from the magazine of the rifle. The evidence shows that there were four rifles and four lands in the gun found on Mitchell's possession. The evidence shows that the bullet found in the cornfield was of the caliber and the character, as to its markings, to indicate that it had been fired from that gun. Of course this evidence is disputed, but we are stating the evidence that the jury had a right to believe. The evidence also shows that there was enmity

between the Mitchell brothers and Lawrence; that, as early as 1918, Arthur Mitchell and John Lawrence had a quarrel; that John Lawrence drew a razor and pursued Arthur, who drew a knife on Lawrence; that at that time Lon Mitchell knocked John Lawrence down with a rock. It is also shown that on August 31, 1920, Cal Mitchell claimed to have been shot through the foot from ambush by someone; that he called the attention of a man in the vicinity to the hole in his wagon box and the fact that he had been shot through the foot, and said to this man that he believed that John Lawrence had shot him.

Witnesses testified as to the size and character of the foot prints; but no evidence was produced as to the size, kind or character of boots or shoes which either of the appellants was wearing, or had at the time of arrest. There is no evidence of identity between the foot prints and the boots or shoes worn by either of the appellants. Counsel for appellants insist that because there was no such identification, and inasmuch as there was no foot print within a quarter of a mile of the rock, or within a quarter of a mile of the residence, that the jury were not reasonable in drawing the inference of guilt. That is to say, that this court in reviewing their action shall say, as a matter of law, that the evidence does not point so surely and unerringly to guilt that this court should permit a conviction to stand.

Counsel for the appellants say that the only evidence which could form a basis for an inference of guilt is that concerning foot prints, and that concerning the gun and the bullet, and, even though it were to be admitted that such evidence was sufficient to justify the inference that either Cal alone or Lon alone fired the shot, the inference is just as probable when applied to one as when applied to the other; that under such a state of the evidence an inference of guilt cannot be drawn,

against both of the appellants jointly, or against either of the appellants separately. In answer to this it may be said that the evidence shows that Cal was still suffering from a gun shot wound in his foot, so that he was unable to do his fall plowing, and Lon had come to help him. If the jury inferred from the circumstances in the case that the Mitchell brothers had enmity towards John Lawrence and wanted to kill him, they might have inferred that Cal was unable to walk that distance, and that Lon did the actual killing.

Counsel say that it must be inferred, first, that the foot prints found are the foot prints of the assassin; second, that they are the foot prints of one of the appellants. But they say that the foot prints are not found closer to the rock than a quarter of a mile, nor closer to Cal Mitchell's house than a quarter of a mile; that therefore the reasoning that the track was made by the assassin, and then that one of the Mitchell's made the track, is basing an inference upon an inference, a thing which the law will not permit. Counsel's logic is compelling, if the premises are correct. The trouble with the reasoning is that for the moment counsel have excluded everything but the footprints and assumed that there is no other evidence that the offender came from the Mitchell home. But it must be remembered in this connection, that Lawrence was shot by a high-powered gun; that his assassin was about 120 yards distant; that the bullet passed clear through Lawrence's body and went on through a ridge of dirt in the cornfield, and through a cornstalk, and was picked up about 75 yards beyond where Lawrence stood. It must be kept in mind that a gun of the type to do this shooting was found in Cal Mitchell's home; that the evidence shows that the bullet fits the gun and has markings that would be made by the rifles in that gun; that there is evidence tending to show that this is the only gun of that kind in that

community. We do not mean to say that the evidence concerning the gun and the bullet is all undisputed. We are simply reciting that from which the jury and the trial court had a right to draw inferences.

There is another reason why we should not be inclined to disturb the judgment if sufficiency of the evidence were the only question. It appears that a map was introduced, to which witnesses referred while describing the topography of the vicinity, and the location of woods, brush, fields, roads and crops. This map is not in the record. Now the scene of this crime is in western Crawford county. It is obvious that a human track within a quarter of a mile of a given place in a hilly country might indicate that the one making the track went to, or came from, that place; whereas, in a country of a different topography it might not so indicate.

Appellants next claim error in instructions. The trial court undertook to cover the law applicable to the facts in the instructions which he gave on his own motion. He refused all other instructions. Appellants first complain of court's instruction No. 15, which is: "Proof of motive on the part of the state is not indispensable nor essential to a conviction. While the motive to commit a crime may be shown as a circumstance to aid in fixing the crime on the defendant, yet the state is not required to prove a motive on the part of the defendant in order to convict him. But in any case evidence establishing or tending to establish motive or lack of motive upon the part of the accused to commit the crime with which he is charged, is proper and should be considered by the jury. And in a case where there is no direct evidence that the accused actually did the killing, but is purely circumstantial in its character, then the question of the presence or the absence of motive becomes of greater importance."

Counsel for the appellants claim error in this instruction because the last sentence in the instruction tells the jury that where there is no direct evidence that the accused did the killing, then the question of the presence or absence of motive becomes of *greater importance*. They say that it is not the province of the court to express any opinion as to the importance of any item of evidence; but, when the court says that certain evidence is important, or very important, or of greater importance in a particular case, it is only another way of telling the jury that such evidence should be given greater weight in determining the question submitted to the jury for decision. Counsel concede that it would be entirely proper for the court to instruct the jury that the absence or presence of motive, if shown, was a matter proper for consideration.

In other words, counsel's argument amounts to this; that in the present case, the evidence being purely circumstantial, the court in effect told the jury that the fact that there was enmity between the Mitchells and Lawrence and a motive for all or one of them to commit the crime, that the circumstance of that motive was of great importance. The fact that a trial court has used language in an instruction which might be understood by a jury as the court's expression of opinion as to the weight of certain evidence should not always be considered reversible error; yet, in a case of the character of the one here, the trial court should certainly be very guarded in its expression, and be cautious not to invade in the least the province of the jury. Appellants rely on *Goodwin* v. *State* (1884), 96 Ind. 550, and *Clough* v. *State* (1878), 7 Nebr. 320, on this point. An examination of these cases discloses that in each instance the court was there passing upon the question of claimed error in the refusal of an instruction similar to the one here in question. It may well be that a court of review

would very properly hold that it was not error to refuse, and at the same time find that it was not error to give, the identical instruction. The judgment in the case at bar must be reversed, for reasons which will appear later in this opinion. We therefore hold that the last sentence in the court's instruction No. 15 should be stricken out or modified to conform in principle to the law as embodied in the part of the instruction which precedes this sentence, without any expression from the court as to the importance of this element.

Counsel next complain of the court's instruction No. 23, which is: "While the burden is on the state to prove every material averment in the indictment, beyond a reasonable doubt, before you will be warranted in returning a verdict of guilty against the defendants in this case, you are instructed that it is not necessary for the state to prove such averments by direct and positive evidence, but such facts may be inferred from circumstances, if any, shown by the evidence in the case, if in your judgment such inferences are warranted from such circumstances, and the *evidence establishing such inferences* satisfies you of their truth beyond a reasonable doubt." (The italics are ours.)

The criticism of this instruction is that the italicised words embodied in the last modifying clause make that clause meaningless. That is to say, the truth of an inference is not established by evidence. Evidence establishes the existence of a fact, from which an inference is drawn. The inference is the result of a mental process by which the truth of the ultimate fact is established. If this were the only question in this case, we certainly would not disturb the judgment because of the verbal inaccuracy in the last clause of this instruction. It is very probable that this verbal slip, inadvertently made by the trial court, in no way misled

or confused the jury. Twelve ordinary men are not apt to be misled by an instruction which is, in the main, correct, simply because the trial court has inadvertently said something which will not stand the deliberate scrutiny of a keen analysis; but on retrial this instruction should be corrected so that it will accurately convey the thought intended.

It is next claimed by counsel for the appellants that the trial court, in his instructions, at each time that he referred to the question of circumstantial evidence, stated the law on that subject most strongly in favor of the state. Our attention is first called to instruction No. 14, which is a correct instruction, but on this subject it says: "The jury are instructed that it is not necessary for the state to prove the commission of the offense and the guilt of the defendants by eye witnesses, but circumstantial evidence is to be considered by the jury, and under the law circumstantial evidence is, in its nature, capable of the highest degree of moral certainty, yet from its nature it requires careful and patient consideration and should be fairly and candidly weighed by the jury. Such evidence need not produce absolute and demonstrative certainty in the minds of the jury, but, if taken as a whole, it produces in the minds of the jury such a degree of moral certainty as to exclude every reasonable doubt of the guilt of the accused, it is then sufficient to authorize a conviction."

The other instruction on this subject is No. 23, *supra.* It will be observed that that instruction says on this subject: "You are instructed that it is not necessary for the state to prove such averments by direct and positive evidence, but such facts may be inferred from circumstances, if any, shown by the evidence in the case."

Both of these instructions are correct on this subject, so far as they go; but the complaint of counsel for appellants is that they do not embody the principle of law

stated from the viewpoint of the defendants, namely, that circumstantial evidence should point so conclusively and unerringly to the guilt of the accused as to exclude every other reasonable hypothesis, as has been repeatedly said:

"The true test by which to determine the value of circumstantial evidence, in respect to its sufficiency to warrant a conviction in a criminal case, is, not whether the proof establishes circumstances which are consistent with, or which coincide with the hypothesis of the guilt of the accused, but whether the circumstances, satisfactorily established, are of so conclusive a character, and point so surely and unerringly to the guilt of the accused as to exclude every reasonable hypothesis of his innocence. The force of circumstantial evidence being exclusive in its character, the mere coincidence of a given number of circumstances with the hypothesis of guilt, or that they would account for, or concur with, or render probable the guilt of the accused, is not a reliable or admissible test, unless the circumstances rise to such a degree of cogency and force as, in the order of natural causes and effect, to exclude, to a moral certainty, every other hypothesis except the single one of guilt." *Cavender* v. *State* (1890), 126 Ind. 47; *Sumner* v. *State* (1841), 5 Blackf. 579, 36 Am. Dec. 561; *Wantland* v. *State* (1896), 145 Ind. 38; *Falk* v. *State* (1914), 182 Ind. 317.

Appellants' instruction No. 13, refused by the court, is as follows: "The court instructs you that it is your duty to consider all the circumstances bearing upon the issues of the defendants' guilt or innocence, and, before you can convict the defendants, or either of them, these circumstances must be consistent with each other, and, taken together, they must point surely and unerringly to the guilt of the defendants before you can convict the defendants, or either of them, The court further in-

structs you that before you can find the defendants, or either of them, guilty, as they stand charged in the indictment, the burden is upon the state to prove facts and circumstances connecting the defendants, or either of them, with the shooting of the decedent, John Lawrence, and thereby killing him, and, before you can convict the defendants, or either of them, all the facts and circum-. stances must be proven by the state to your satisfaction, beyond a reasonable doubt, that the defendants, or either of them, did shoot and kill the said John Lawrence. These facts and circumstances must be consistent with every inference that the defendants are guilty, and these facts and circumstances introduced by the state for the purpose of connecting the defendants with the killing of the decedent, John Lawrence, must be consistent with the hypothesis that the crime charged could not have been committed by any other person, other than the defendants."

While this instruction is not the happiest in its wording, we think it covered the principle of law, from the standpoint of the defendants, in form apt enough not to be misleading. And, in view of the fact that the learned trial court in his instructions Nos. 14 and 23 had stated the law on this subject as strongly as possible in favor of the force of circumstantial evidence, this instruction should have been given, or the court's instructions Nos. 14 and 23 should have been balanced by the thought contained in the instruction refused. It was error to refuse this instruction.

We need not set out appellants' instructions Nos. 9 and 10. It is sufficient to say that they would be misleading if there is any evidence of facts from which the inference could reasonably be drawn that appellants were jointly engaged in the commission of the crime. So they were correctly refused,

regardless of whether they were accurate in other particulars.

Arthur Mitchell was acquitted, presumably because of an alibi. He was in Minnesota at the time the crime was committed, and had been gone from the vicinity of this crime for a long time. He returned, however, to Crawford county about three days after John Lawrence had been killed. When he was on the witness-stand he was asked on cross-examination by the state, after having his attention called to a conversation with one Summers in Princeton, Indiana, on September 15, 1920, the following question: "I will ask you if in that conversation you didn't say to James Summers there, on the 15th day of September, at the corner of Ohio and Seminary streets, at Princeton, Ind., in about a square of where your cousin William Mitchell lived, 'I got a letter from Calvin that he was going to shoot John Lawrence and I wrote him not to do it, that when I got home I would do it.'" To which question counsel for the defendants objected, for the reason "that it was a matter not inquired into in direct examination and not related to any issue in this case, and for the further reason that it is a declaration made in the absence of the defendant, Calvin Mitchell." The court then stated that the question was put upon the ground of an impeaching question, overruled the objection and an exception was saved. Whereupon the witness answered, "No, sir. I never talked to him nothing like that." And further on answered that he did not write to Calvin Mitchell, and did not receive a letter from Cal Mitchell while he was away. Counsel's objection to this question was not good as to Arthur Mitchell, but it was good as to Calvin Mitchell, and would have been good as to Lon Mitchell had the objection included him. Summers was produced and completed the impeachment.

It must be remembered now that John Lawrence was

killed on September 12, 1920; that the conversation re-
ferred to was on September 15, 1920. The
**6-8.** Mitchell brothers were jointly indicted. The acts
and declarations of each of those jointly engaged
in a criminal enterprise are competent against all the
participants; but when the crime is consummated, after-
declarations and admissions are not competent against
anybody except the declarant. Arthur Mitchell had taken
the witness-stand and denied that he had any enmity
against John Lawrence, or wanted him killed, or that
he had in any way participated in the crime. His state-
ments against his interest after the event are competent
against him, but not against Cal and Lon, who are joint-
ly indicted with him. When such declarations and
admissions are admitted, either directly or by way of
impeachment, because they are competent against the
declarant, the court should at once admonish the jury
that they are not to be considered at all with reference
to the other defendants. The fact, if true, that Arthur
said his brother Cal had written him a letter in which
he declared he was going to kill John Lawrence, is not
evidence at all that Cal ever wrote such a letter, and
stands upon the same basis as the mere declaration of
a third party to that effect. The injustice of such evi-
dence is that it furnishes no opportunity for cross-ex-
amination. If Cal ever wrote such a letter, the letter
itself was the best evidence. If Arthur were not a
party defendant and were a willing witness for the
state, he could not be heard to say on the witness-stand
that Cal had made such a statement in a letter, until
the absence of the letter was accounted for. The dec-
laration by Arthur brought into the record on the theory
of impeachment of him has the effect upon the jury of
telling them that Cal did write such a letter.

It is also claimed by counsel that the court erred in
refusing to withdraw the case from the jury because of

a remark made by counsel for the state in argu-
9. ment. As we have said before, Cal, Lon and
Arthur Mitchell all took the witness-stand, were
examined and cross-examined. Counsel for the state,
while commenting on the subject of footprints said:
"Do either one of the defendants now have the measure-
ment put upon their shoes to show how large they are?"
The court admonished the jury that this was an im-
proper remark; that they should not consider it. We
would have to assume, if this were the only question
in the record, that the trial court's admonitions to the
jury destroyed the effect of counsel's misconduct. This
was misconduct, as the trial court correctly ruled. The
defendants did not have to submit their persons to
measurement. It is proper for an advocate to have
zeal, but when he is representing the state in a criminal
case, he should not let his zeal carry him away, because
it is his duty not to try to convict the defendants by im-
proper methods. A good place for ardent zeal is in get-
ting the material facts and marshaling them before the
jury by competent witnesses. For instance, in the pres-
ent case it looks from here as though some evidence
might have been adduced to show the identity between
the footprints and the boots or shoes of someone.

Other questions are presented, which we need not
discuss, because they will probably not occur on retrial.

The judgment is reversed, with instructions to sus-
tain appellants' motion for a new trial.

The clerk of this court will prepare an order, direct-
ing the warden of the State Prison to cause the prison-
ers, Calvin and Lon Mitchell, to be delivered over to
the sheriff of Crawford county, there to abide the order
of the Crawford Circuit Court.

Willoughby, J., absent.

Myers, J., dissents. In his judgment instruction No.
13 tendered by appellants was properly refused.