JOHNSON ET AL. *v.* STATE OF INDIANA.

[No. 30,145. Filed May 13, 1964.]

*George W. Brady* and *Paul S. Brady,* both of Muncie, for appellants.

*Edwin K. Steers,* Attorney General, and *Carl E. Van Dorn,* Deputy Attorney General, for appellee.

MYERS, J.—This is an appeal from a conviction of robbery as charged in a joint affidavit filed in the Delaware Superior Court No. 2 of the State of Indiana. Trial was had before a jury on pleas of not guilty. Appellants submitted evidence and took the witness stand to testify in their defense. The jury returned a verdict finding each of them guilty of robbery as charged. They were sentenced to prison for a period of not less than ten nor more than twenty-five years and disfranchised. Separate motions for new trial were filed and overruled. This appeal followed.

The affidavit charged six persons, including these appellants, as having participated in the robbery. The other defendants were known as James H. Wallace, John Wilson and James Carl Wesby, Jr. Wallace was tried with the appellants herein and found guilty. He did not appeal his conviction. John Wilson pleaded guilty and commenced serving his term in prison. The record is not clear as to what happened to Wesby, Jr., the only reference to him being a statement by the Prosecutor that he was confined as a prisoner in the Indiana State Reformatory and a request that the court subpoena him as a material witness to testify at the trial. There is nothing to show that he appeared as a witness or testified as such. Whether he was confined to the Reformatory because of proceedings in this case, or for some other reason, is not revealed.

The assignment of errors contains a number of improper assignments, such as error in the admission of certain testimony and evidence during the trial and the overruling of motions for directed verdict. These are not independent assignments of

error, and belong in the motion for new trial. Supreme Court Rule 2-6. Appellants do claim error in overruling the motions for new trial.

These motions filed separately by each appellant are similar, lengthy and involved. In general, they boil down to the following specifications of error:

(1) Overruling appellants' motions for directed verdict at the end of State's evidence.

(2) Overruling appellants' motions for directed verdict at the conclusion of all the evidence.

(3) Overruling of appellant Robert Johnson's motion for a separate trial.

(4) Admitting in evidence testimony given by certain deputy sheriffs concerning the statement made to them by James H. Wallace after his arrest and then admitting a written confession signed by him and John Wilson known as State's Exhibit 29.

(5) Insufficiency of the evidence.

(6) That the verdict is contrary to law.

We may dispose of the first contention concerning the overruling of appellants' motions for directed verdict at the conclusion of State's evidence. Any error committed by the court's action then was waived when appellants presented their evidence. *Swift* v. *State* (1961), 242 Ind. 87, 176 N. E. 2d 117.

As to overruling appellant Robert Johnson's motion for a separate trial, this was a matter of discretion with the trial court pursuant to statute. Section 9-1804, Burns' Ind. Stat., 1956 Replacement. Error can be claimed only in case of an abuse of this discretion. *Neal* v. *State* (1938), 214 Ind. 328, 14 N. E. 2d 590, 15 N. E. 2d 950; *Weer* v. *State* (1941), 219 Ind. 217, 36 N. E. 2d 787, 37 N. E. 2d 537;

*Mobley* v. *State* (1949), 227 Ind. 335, 85 N. E. 2d 489. The motion itself is not set forth in the transcript, which reads only as follows (court's entry of March 2, 1961):

"Comes now the defendant Robert Johnson by counsel and files motion for separate trial which motion so filed is in these words, to-wit; (H.I.):"

This is the only reference to the motion, and there is no showing that the court ever ruled on it. However, appellant Johnson waived his rights to a separate trial, if he had any, when he appeared in open court on June 5, 1961, with counsel, and voluntarily submitted himself for trial with the other defendants and their counsel without raising objection to being tried jointly. Thus, the court did not abuse its discretion in trying him with the others.

The other contentions of appellants involve a consideration of the evidence to which we shall devote our attention at this time.

On the night of January 22, 1961, which was Sunday, between 9:30 and 10:00 p.m., Mrs. Nina Bunner, age 71, was in her home alone in a sun room watching television. She lived in Royerton, Indiana, a small town on State Road 3, near Muncie, Indiana. There was a safe in her bedroom which contained glass fruit jars filled with silver money, United States currency, two rings, an automatic pistol, a revolver and a watch. As she sat watching the television program, she heard a "kind of swish and it looked like two big giants coming at me." Something was thrown over her head and some one pushed her chest and head until the back of her chair was broken, at the same time asking for the combination of her safe. They tied her legs and arms, rolled her out of the chair, and piled

rugs, bedspreads and articles from the bed on her. They turned the television set off, ran through the dining room and out the rear door. She was finally able to get up, and made a telephone call to the police, who told her she would have to call the sheriff. She asked that they do this for her, which they did. When the sheriff arrived, she told him what `had` happened to her, and went by ambulance to a hospital where she remained for two weeks. On investigation of the premises, it was found that the safe in her bedroom was open and the money, rings, pistols and watch were gone.

It is to be noted that Mrs. Bunner did not identify any of the defendants, including these appellants, as being her attackers, nor did she mention that they were of the colored race. Several days later, appellant Robert Johnson was arrested and took police officers to his home. He and appellant Pearl Johnson lived at 921 North Brady Street in Muncie as husband and wife. He pointed out where some money from the robbery was located. This was in the chimney of his fireplace. The police took a sledge-hammer and broke through the chimney into the flue. Money came out in bags wrapped up in a large sooty towel. It was all coins, in six or seven packages. A ring was also found. The money and ring were identified as belonging to Mrs. Bunner and being part of the property stolen from her safe.

It seems that several days after the robbery, police officers went to Danville, Illinois, where they arrested the defendants Wallace and Wilson and recovered part of the stolen money from them. There is no indication in the record as to how the police arrived at the connection between these defendants and the robbery. Wallace, who was out on parole for another conviction,

waived extradition and returned to Indiana voluntarily with Wilson and both were placed in the Delaware County jail in Muncie. This all took place at the end of the week of January 22, 1961. While in jail, Wallace and Wilson made statements to the police and the sheriff, which, in substance, were as follows:

On January 21, 1961, Wallace and Wilson drove from Danville, Illinois, to Indianapolis and then to Muncie, where Wilson had previously lived. They took Wallace's wife's automobile, which was a Chrysler Imperial with Illinois license plates. In Muncie, they ran into Carl Wesby, Sr., and James Carl Wesby, Jr., who were uncle and nephew. They had planned to return to Danville that evening, but Carl Wesby, Sr., urged them to stay overnight in order to "make some money" by robbing the safe at Mrs. Bunner's house. Wallace and Wilson ended up at the Johnson house, since Wilson had known Pearl when he was a resident of Muncie. They stayed all night there. On Sunday, they made their plans, and Pearl drew a diagram of the Bunner house showing where the safe was located. Carl Wesby, Sr., was going to get the tools with which to open it.

Robert Johnson was in bed most of the afternoon while the others watched television. He finally got up around 5:00 o'clock and talked about how much money was at the Bunner house, "eighty to one hundred thousand dollars." When it grew dark, Wallace, Wesby, Jr., Robert Johnson and Wilson drove over to Carl Wesby, Sr.'s house, transferring from Wallace's Chrysler Imperial to Wesby, Sr.'s 1958 Oldsmobile. The five of them then drove to the Bunner house. However, they saw an automobile in the driveway and realized that Mrs. Bunner had guests, so they went back to the Johnson house. Later, about 10:00 p.m., they returned to the Bunner house and parked the Oldsmobile about

two blocks away, in view of the house. Wallace, Wilson and Wesby, Jr., got out of the car, walked over to the rear of the house, broke in the door, threw a rug over Mrs. Bunner and robbed the safe after tying her up. Meanwhile, Johnson and Carl Wesby, Sr., stayed out in the car. A police patrol car happened to come along and stopped by the Oldsmobile to see if the occupants were in trouble. This was while the robbery was taking place. The police car was seen by the three defendants from the house, and, thinking that they might get caught, they hurriedly left, going through backyards, fields and across alleys. There was snow on the ground and it was very cold, being below zero. They stumbled in their flight, and Wesby, Jr., lost a shoe in crossing a fence. Each time they stumbled, some of the money they were carrying fell to the ground. Wilson took off one of the shirts he was wearing and wrapped it around Wesby, Jr.'s shoeless foot. They finally made it back to the Johnson house, where everybody but Wesby, Sr., was present. They took the money into the bathroom, split it in six piles, each one taking his share. Pearl promised to see that Carl Wesby, Sr., received his. Wallace, Wilson and Wesby, Jr., then left and took a cab to where Wallace's car was parked and drove back to Danville that night.

This statement was then typed up, signed by Wallace and Wilson, and dated January 29, 1961. The deputy sheriffs also signed it. At the trial, this statement was marked State's Exhibit 29 and introduced in evidence over objection.

One of the deputy sheriffs who talked with Wallace and Wilson walked back over the route they said they had taken that night and found some money at places where the defendants said they stumbled. He also

found Wesby Jr.'s shoe in the fence and the shirt that had been wrapped around his foot. He observed footprints around the Bunner house in the snow.

Wallace entered a plea of not guilty, and said at the trial that he had made the statement and signed the confession because he was told he would receive special consideration for doing so in that he would get time off for his parole violation (crossing State line) and receive a minimum sentence in Muncie. He denied he was in Muncie on January 21 and 22, 1961, and stated he was in Danville then.

John Wilson was brought from prison as a State's witness. He testified that he had signed the confession, but only because he was told to do so. He denied the statements made by Wallace. He was declared to be a hostile witness.

The Johnsons, both Robert and Pearl, testified that no one had stayed with them on Saturday night, January 21; that they did not know Wallace until after they had been arrested, and met him for the first time in the county jail. Robert Johnson said he started drinking Friday evening, January 20, and remained drunk until he went to work Monday morning, and remembered nothing. Pearl told him she had talked with Wesby, Jr., who told her there was a package in the chimney at the house. Other than that, he had no idea how the money got there. He denied taking any part in the robbery.

Pearl admitted that she had previously worked for Mrs. Bunner for two and a half years as a cleaning woman, but denied she knew the existence of the safe. She said she had made a telephone call to a neighbor of Mrs. Bunner on Sunday, January 22, requesting information as to whether Mrs. Bunner was at home. She

claimed Robert was drunk the entire week-end until she took him to work Monday morning.

Wesby, Sr., denied taking any part in the robbery. He pleaded an alibi and had many witnesses support it. He was a Deacon in his church and had been for about eight years. That Sunday, he went to church for the morning services, for afternoon services, and, finally, to a different church at 8:00 p.m. for inter-church services and a "sing." He was there until 10:30 p.m., and then he and a lady friend, who had ac-companied him all day, stopped by his sister's house to hear some hymns on records which were played by her children. Around midnight, he and his friend walked home. Wallace was not known to him until he met him in jail after being arrested. Wilson he had known previously when he lived in Muncie.

Appellants claim that it was reversible error for the court to have allowed the admission in evidence of the deputy sheriffs' statements of what Wallace told them, together with the signed confession of Wallace and Wilson, being State's Exhibit 29. They rely on the rule that when two or more defendants are charged with the same crime, declarations made after the com-mission of the crime are not admissible against those not making such declarations, where no conspiracy exists, citing *Dye* v. *State* (1891), 130 Ind. 87, 29 N. E. 771; *Walls* v. *State* (1890), 125 Ind. 400, 25 N. E. 457; and *Kahn* v. *State* (1914), 182 Ind. 1, 105 N. E. 385, as authorities. It is claimed that there was no *prima facie* case of conspiracy made by the State, and thus these statements and State's Exhibit 29 were highly prej-udicial to appellants and their admission was rever-sible error.

We find that the court gave an instruction on con-spiracy which reads as follows:

"You are instructed that the crime as charged in the affidavit in this cause is one of robbery. Although not alleged in the affidavit, the State of Indiana may prove that the defendants herein entered into a conspiracy to commit the crime charged. In order to prove that the accused persons conspired with one another it is not essential to establish by direct evidence that they entered into the unlawful agreement or conspiracy. Evidence in proof of conspiracy will generally be circumstantial and it is not necessary for the purpose of showing the existence of the conspiracy for the State of Indiana to prove that the defendants came together and actually agreed upon a common design and the purpose, and agreed to pursue such common design or purpose in the manner agreed upon. It is sufficient if such common design or purpose is shown by circumstantial evidence."

The appellants did not make any objection to this instruction when submitted. Thus, the jury could have inferred from the evidence that it was sufficient to constitute a *prima facie* case of conspiracy. In *Hansen v. State* (1952), 230 Ind. 635, 642, 106 N. E. 2d 226, 229, this court said as follows:

"Where several defendants are tried together the confession of one, made in the absence of the other defendants, may be admitted against him if the court instructs or admonishes the jury it is admitted only against the one who made it and is not to be considered as evidence against any of the other defendants who did not join in the statement. *Mitchell v. State* (1923), 193 Ind. 1, 14, 138 N. E. 507; *Flannigan v. State* (1922), 192 Ind. 19, 23, 134 N.E. 885; Wigmore on Evidence, 3rd ed., §1079 (d), p. 134. In the case at bar the court admonished and instructed the jury as follows:

" 'The offer to introduce this Exhibit #4, it will be admitted, but I instruct the jury that it is not to be considered by them against the Defendant Coghill or Hansen. You are not to consider any-

thing in the statement in arriving at a verdict in this case as to Coghill and Hansen.'

"We think this was sufficient to comply with the foregoing rule as to the admission of such statements and no error was, therefore, committed by the court in permitting the introduction into evidence of state's exhibit No. 4."

The court did just this when it admitted into evidence the declarations of Wallace to the deputy sheriffs and Exhibit 29. This is what took place when there was a motion to admit Exhibit 29 into evidence:

"Mr. Frederick McClellan: I have a few preliminary questions. May it please the Court, defendant James Wallace objects to State's Exhibit Twenty-nine for the following reasons: That the exhibit upon its face does not show that the defendant was advised of his constitutional rights; the right to counsel. Said statement was made pursuant to certain promises and offers made —

"Mr. Richard Clapp: We move that the jury be excused if counsel is going to —

"Mr. Frederick McClennan: Do you mind if I make the objection?

"Mr. Richard Clapp: I do mind. The objection is not well taken. Fifty-four Indiana, Three Ninety-nine; Fifty-nine Indiana One hundred five and One thirty-six Indiana Six hundred Sixty-three, all provide conversations made voluntarily and not made in fear or violation are admissible in evidence. Check it the burden is on the defense.

"THE COURT: The Court is familiar with the law. Objection overruled and conversation will be admitted only as to the man making the confession and is not binding upon any other defendant.

"Mr. Paul Brady: I think for the record it should be noted that Pearl and Robert Johnson share in the objection.

"Mr. George Brady: And Defendant Carl Wesby, Sr. also.

"THE COURT: Let the record so show.

"MR. RICHARD CLAPP: Is counsel to state a ground for the objection?

"Mr. Paul Brady: The only record shown was that defendant James Wallace made an objection. We want to show the other defendants will make the same objection.

"Mr. Richard Clapp: We don't want that.

"THE COURT: They can, but I can overrule it.

"Mr. Richard Clapp: They have no objection. They must state an objection, not just show —

"THE COURT: Counsel for the defense has stated the reason for the objection and the counsel have agreed the objection stated by Mr. McClellan will go for all defendants. Let the record show the objections are overruled and that my previous ruling that the exhibit is admitted only to bind the one giving the statement still stands."

In overruling the motions for directed verdict at the close of the State's case, the court said:

"Will the reporter note that the motion that the testimony of State's witness Richard Hufford be limited only as it applies to the defendant, James Wallace and that the jury be instructed that his testimony is not applicable to defendant Carl Wesby, Sr. and particularly that portion of his testimony which and wherein he relates conversation had with the defendant James Wallace which was later reduced to writing in the form of Exhibit twenty-nine, said conversation being outside of the hearing of the defendant Carl Wesby, Sr."

We find that the court committed no error in ■ admitting this declaration of Wallace, the signed confession, Exhibit 29, into evidence.

Appellants also state in their argument that this evidence should not have been admitted because they were the declarations of a third party made in ■ the absence of the accused, citing *Turbeville* v. *State* (1873), 42 Ind. 490, as authority. This is

primarily an objection based on hearsay. But, as has been set forth above, no such objection was made at the trial. On appeal, appellants may not change the grounds for objection from those stated during the trial. *Patton et al. v. State* (1960), 240 Ind. 364, 165 N. E. 2d 377; *Richeson alias, etc. v. State* (1953), 233 Ind. 1, 116 N. E. 2d 101.

The jury having been duly admonished to disregard the statements and State's Exhibit 29 insofar as appellants were concerned, we look at the other evidence presented to see if it was sufficient to support the jury in its conviction of appellants.

Over $500 in coins and a ring were found in the chimney of the Johnson residence. The ring was identified by Mrs. Bunner as having been stolen from her safe. According to the testimony of a police officer, Pearl and Robert Johnson made a statement that the money came from the safe in Mrs. Bunner's bedroom.

The possession of stolen goods may be considered as evidence of guilt. It is stated in *Vaughn v. State* (1939), 215 Ind. 142, 149, 19 N. E. 2d 239, 242:

"Possession of stolen goods may be evidence of guilt, but the law raises no presumption of guilt upon the proof of any evidentiary fact. It is the exclusive province of the jury to indulge in a presumption of guilt."

It is further stated in *Mims et al. v. State* (1957), 236 Ind. 439, 444, 140 N. E. 2d 878, 880, as follows:

"Exclusive possession of property shown to have been stolen, shortly after the larceny, unquestionably is a circumstance to be considered by the jury, and if proof is made that such larceny was recently committed and there is no evidence to explain the possession of the defendants, a larceny conviction based upon such evidence will be sustained on appeal."

To the same effect are the cases of *Gilley et al. v. State* (1949), 227 Ind. 701, 705, 88 N. E. 2d 759, and *Evans v. State* (1946), 224 Ind. 428, 68 N. E. 2d 546.

There was no explanation by the Johnsons as to how the stolen property came to be in their chimney. Pearl only said that Wesby, Jr., told her on the Thursday following Sunday, January 22, that there was a package in their "stack" which he had put there. The police officer who conducted Robert Johnson to his home after his arrest was asked how he found the money. The conversation was as follows:

"Q. How much money was found there?
"A. Over five hundred dollars in change.
"Q. Just describe the way you found it.
"A. *Mr. Johnson showed us where the money was.* We had to take a sledge hammer and bust the flu and the money came out in bags wrapped up in a large towel. Mr. Johnson was with us when we searched." (Our emphasis.)

In her testimony, Pearl admitted to having called a neighbor lady of Mrs. Bunner on Sunday, January 22, and inquiring about Mrs. Bunner. The neighbor stated that Pearl had called and asked if Mrs. Bunner was at home. Although Robert insisted that he was drunk at home the entire week-end, the owner of a restaurant known as "Rock 'n Roll" stated that he had seen him at his restaurant on either Saturday or Sunday night of that week. Wallace and Wesby, Jr., were also there at the same time, but they were not together.

A state policeman testified that he had conversations with the Johnsons who told him that the money was taken from the safe at the Bunner home.

A depuy sheriff stated that he overheard a conversation between Robert Johnson and John Wilson in the

jail on or about Friday, January 27. The monies and ring found at the Johnson home had been brought to the jail and placed on the floor before the appellants. The conversation was related as follows:

> "At that time amid the confusion of all these people I was one who overheard a conversation between Mr. Robert Johnson and Wilson. It had nothing to do with the theft of the money. It was to the fact that in the bathroom of his residence, Johnson's residence, they were arguing where each individual was placed and where the six people were and then Wilson would say, no, it wasn't that way, you were here, et cetera. It was over the placement of each individual."

This evidence is completely outside the declarations and confession made by Wallace and Wilson. From it, the jury could have reasonably inferred that the Johnsons were guilty of the charge of robbery.

As to Carl Wesby, Sr., we find that the jury's verdict was contrary to law in finding him guilty. Outside of Wallace's declarations and confession, there is no evidence to connect him with this robbery. His alibi was unimpeached. The State could only provide two witnesses who attended the evening church services, and their testimony was to the effect that they had not seen him there. Seven other witnesses called by Carl Wesby, Sr., declared that they had seen him in the Union Baptist Church that evening, including the Minister and a lady who sat directly behind him.

Judgment affirmed as to appellants Robert and Pearl Johnson. Judgment reversed as to appellant Carl Wesby, Sr., with instructions to sustain his motion for new trial.

Landis, C. J., and Arterburn and Achor, JJ., concur.

Jackson, J., concurs in result as to Wesby, Sr., and would also grant new trial to Robert and Pearl Johnson.

NOTE.—Reported in 198 N. E. 2d 373.