Samuel JONES, Jr., Appellant,

v.

STATE of Indiana, Appellee.

No. 377S206.

Supreme Court of Indiana.

June 18, 1981.

R. Davy Eaglesfield, III, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Janis L. Summers, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

On November 6, 1963, Samuel Jones, Jr., was convicted of murder in the second degree. He was sentenced to life imprisonment on November 18, 1963. On December 6, 1963, Jones filed a Motion for New Trial which was overruled on March 30, 1964. On April 29, 1964, a Notice of Appeal, Petition for Transcript and Motion for Appointment of Counsel were filed by Jones. On June 17, 1964, his Motion for Appointment of Counsel was granted and Richard Clapp, Public Defender of Delaware County, Indiana, was appointed to represent Jones. On September 24, 1964, Jones filed his Praecipe for the entire transcript. The record does not reflect any further action on this appeal. On February 6, 1976, defendant Jones *pro se* filed his Verified Petition for Post-Conviction Relief under Criminal Rule 1. On April 12, 1976, the trial court denied the motions for default on post-conviction relief and for leave to proceed *pro se*. The Grant County Clerk was ordered to send a copy of the Motion for Default and a copy of the Motion for Leave to Proceed Pro Se to the Public Defender of Indiana. On March 30, 1977, Richard M. Givan, Chief Justice of Indiana, granted the petition of Samuel Jones, Jr., to file a belated appeal in this action.

On January 18, 1963, an indictment was filed presenting and charging that Samuel Jones, Jr., and his wife, Jane Helene Jones, had committed murder in the second degree by unlawfully, feloniously, purposely and maliciously but without premeditation withholding and not providing food, clothing and medical care to their 3½ year old son, John Wesley, and thereby had caused his death, constituting murder. Each defendant was arraigned on August 2, 1963; each pleaded not guilty. On September 6, 1963, a motion signed by each defendant and requesting separate trials was filed. Separate and several motions for separate trials were filed. These motions were overruled on September 27, 1963.

The jury found the appellant, Samuel Jones, Jr., guilty of second degree murder, and his wife guilty of manslaughter. The sole issue presented for our review is whether the trial court erred in overruling a pretrial motion for separate trial, and in denying a subsequent motion for a new trial.

On January 2, 1963, a deputy sheriff received a call at about 12:30 p. m. to go to 2702 Kilgore, Muncie, Delaware County, Indiana, where a baby had died. Two deputies and the coroner arrived at the Jones home where they found the dead child in a bedroom. The mother, Jane, was there. No bedding covered the urine-soaked mattress, and the body was wrapped in a blanket. The body was taken to the hospital.

A pathologist examined the body of the child, John Wesley Jones, on January 2, 1963. The body was covered with skin ulcers of varying severity. The scalp had some ulcers and some of the child's hair was absent. There were ulcers on the genitals and legs. The hair was stiff and dry, and hair and skin could be removed easily with the fingers. The body weighed about thirteen pounds and was about thirty-six inches long. Acute pneumonia was found in the lungs, and glands had degenerated. Fatty deposits had dissolved. No food was present in the stomach. Muscles had atrophied. It was determined the child had

died from acute pneumonia and very advanced malnutrition.

Three other children were taken from the home to the welfare department by order of the circuit court. The youngest was hospitalized. All three surviving children were suffering from malnutrition.

■ The statute in effect at the time of this offense was Burns Ind.Ann.Stat. § 9–1804 (1956) which provided that:

"When two [2] or more defendants are jointly charged with any offense, whether a felony or a misdemeanor, they shall be tried jointly, unless the court, in its discretion, on the motion of the prosecuting attorney, or of any defendant, or on its own motion, orders separate trials. In making an order or orders for separate trials, the court may order that one or more defendants be each separately tried and the others jointly tried, or it may order that several defendants be jointly tried in one trial and the others jointly tried in another trial or trials, or it may order that each defendant be separately tried. A motion for a separate trial shall be filed at least ten [10] days before the day set for a joint trial, or, if a date less than ten [10] days ahead, is set for a joint trial, then such motion shall be filed within two [2] days after the setting of the case for joint trial."

The decision as to whether a separate trial shall be granted is within the trial judge's discretion. *Garrison v. State*, (1967) 249 Ind. 206, 231 N.E.2d 243; *Sherwood v. State*, (1961) 241 Ind. 215, 170 N.E.2d 656. An allegation of error in the overruling of a motion for a separate trial can be supported only by showing of abuse of discretion on the part of the trial court. *Garrison, supra, Johnson v. State*, (1964) 245 Ind. 295, 198 N.E.2d 373.

■ The defendant specified in his Motion for a New Trial that the trial court had erred in allowing the testimony of several witnesses who had testified as to conversations which were had out of the presence and hearing of the defendant, Samuel Jones, Jr. These conversations were with witnesses and Mrs. Jones, and were admitted into evidence with the admonition by the Court to disregard the testimony as to Samuel Jones, Jr. Appellant claims that because of the number of witnesses involved and the content of the conversations, the defendant was prejudiced and the overruling of his motion for a New Trial was error. In order to carry his burden on this issue, appellant must show that in light of what actually occurred at trial, the denial of a separate trial subjected him to such serious prejudice that the trial court abused its discretion in denying his motion for severance. *Porter v. State* (1979) Ind., 391 N.E.2d 801, 808; *Ortiz v. State*, (1976) 265 Ind. 549, 561, 356 N.E.2d 1188, 1195. *See Frith v. State*, (1975) 263 Ind. 100, 325 N.E.2d 186.

The statements complained of revealed that the defendants were having marital difficulties and that Mrs. Jones had complained to neighbors about Mr. Jones being away from home, not showing interest in or providing for her or the children, and about his beating her.

■ Defendant cites *United States v. Haupt* (7th Cir., 1943) 136 F.2d 661; and *Baniszewski v. State*, (1970) 256 Ind. 1, 261 N.E.2d 359 in support of his claim that admonitions were insufficient to overcome the prejudice such testimony would produce and that a reversal is required because the verdict was based upon passion, bias, or prejudice. We disagree. Initially, we must note that this situation does not involve the statements, admissions or confessions of a co-defendant who does not take the stand and testify, and is, therefore, unavailable for cross-examination.

*United States v. Haupt, supra*, involved a trial of six defendants who were prosecuted jointly for treason. Fourteen statements of great length were admitted which were incriminating as to the defendant by whom made and against the other defendants. Because of the number of defendants and the length and complexity of the statements, it was held that the court erred in not granting the defendant's motion for a new trial.

In *Baniszewski v. State*, (1970) 256 Ind. 1, 261 N.E.2d 359 this Court reversed a judgment and ordered a new trial. That case involved prejudicial publicity, lack of counsel and proper information regarding being furnished counsel; statements made by co-defendants who were not subject to cross-examination; refusal to grant change of venue and an overruling of a motion for a new trial by a judge pro tempore. These cases do not apply to the situation presented here.

The statements which the appellant claims prejudiced him were made by witnesses who recounted conversations between themselves and Jane Helene Jones. In summary, approximately four times witnesses testified briefly that Mrs. Jones had said that Mr. Jones had "half-choked her to death," "was mean to her" and "had stomped her once over something." Other witnesses testified that Mrs. Jones told them that Samuel Jones, Jr., "ran around" and that they were not getting along in their marriage. Chief Deputy Sheriff Cunnington testified that when Mrs. Jones was talking to her father he overheard a conversation at the jail in which Mrs. Jones Jr.'s father said, "I have told you and Sam both numerous times you'd better get the house cleaned up and to take proper care of those children or they will take them from you." Mrs. Jones had answered, "Yes, Daddy, I know you have and we should have done it." These statements were made as part of testimony admitted as to Mrs. Jones. The court admonished the jury to consider them only as to Mrs. Jones.

Both defendants testified and statements made by them revealed the same information that was elicited from the other witnesses. Mr. Jones testified himself that he and his wife had had marital difficulties. He testified that he had had a girlfriend for some time and that later he and his wife had reconciled. He testified that he had hit his wife and that Mrs. Jones complained all of the time. Mrs. Jones testified that they had had problems, that she had filed for divorce and that they had reconciled. She testified that she had called the welfare department to try to get medical attention

for their children. Mr. Jones testified that he had worked his way up in the Eagles Lodge in three years and had become president, when it usually takes six years to become president. He stated that he was at the lodge nearly every evening. Mrs. Jones testified to the same facts and that this caused them problems. There was testimony from each that Mr. Jones usually bought groceries for the family and that Mrs. Jones usually took the children to the doctor and fed them. All of the above witnesses were subject to cross-examination and were thoroughly cross-examined.

In order to prevail on his claim, the defendant must show that the trial judge's actions amounted to an abuse of discretion. *Johnson v. State*, (1964) 245 Ind. 295, 198 N.E.2d 373. There has been no such showing here. In this case there was one decedent. The two defendants were married and lived together. Each was involved in the death of their son and had an opportunity to know the facts of the situation. Neither made any claim or showing of surprise at what the other said. They were represented by different attorneys. The cause was venued to reduce the impact of any publicity. There was no claim that the trial judge was prejudiced as to either of the defendants. He often admonished the jurors that certain evidence could be considered against only one defendant.

In view of what actually occurred during trial and the other evidence offered, the impact of the content of these conversations was very insignificant. These statements were merely cumulative of other evidence which was admitted without objection, and error in their admission, if any, was harmless. *Pollard v. State*, (1979) Ind., 388 N.E.2d 496, 505; *See also Walton v. State*, (1980) Ind., 398 N.E.2d 667; *Chatman v. State*, (1975) 263 Ind. 531, 547–48, 334 N.E.2d 673, 683. The trial court did not commit reversible error in denying a motion for separate trial, or in denying the motion for a new trial.

Judgment affirmed.

All Justices concur.