Clifford Allen GORDON, Appellant,

v.

STATE of Indiana, Appellee.

No. 10S00–9110–CR–836.

Supreme Court of Indiana.

March 3, 1993.

Vicki L. Carmichael, Chief Public Defender, Jeffersonville, for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of two counts of Attempted Murder and one count of Attempted Robbery, Class A felonies. On each of the attempted murder counts, he received thirty (30) years enhanced by twenty (20) years by reason of aggravating circumstances. On the attempted robbery charge, he received a sentence of thirty (30) years enhanced by twenty (20) years by reason of aggravating circumstances, and in addition that sentence was enhanced by thirty (30) years by reason of his status as a habitual offender. The sentence for attempted robbery and one of the sentences for attempted murder were ordered to be served concurrently but consecutive to the remaining count for attempted murder, for a total sentence of one hundred thirty (130) years.

The facts are: On January 19, 1991, Betty Stemle, victim number one in this case, drove into the K–Mart parking lot in Clarksville, Indiana. As she opened her door, she was confronted by a man later identified as appellant. He demanded her money, and when she hesitated, he shot her. The wound she sustained required hospitalization for approximately three weeks and removal of one kidney, her spleen, part of her pancreas, and significant repairs to her stomach.

Appellant then fled the scene as the victim began screaming and blowing her car horn to summon aid. Melanie Curtis, a K–Mart employee, was just leaving work; she saw appellant standing by the victim's car and heard what appeared to be a shot. When the victim began screaming, Curtis observed a man running from the scene. She identified the man shortly thereafter when taken to the scene of appellant's arrest. She also identified appellant in court although she observed he had changed his appearance drastically by shaving and getting his hair cut.

John Browning, who was in the parking lot, also heard the gunshot and the victim's screams. When he observed appellant fleeing the scene, he immediately gave chase. In the meantime, Arthur Hilligoss, the second victim in this case, was just arriving in his van. He saw Browning running and mistakenly believed him to be the attacker. However, when he cut Browning off with his van, Browning advised him of the true perpetrator and Hilligoss proceeded to follow appellant. Appellant ran into a trailer park and Hilligoss exited his van and discovered appellant lying under a trailer.

In the meantime, Richard May, a co-perpetrator with appellant, under the guise of attempting to pursue appellant, arrived at the trailer under which appellant was attempting to hide. When Hilligoss asked May to assist, he did not respond. Appellant came out from under the trailer and shot Hilligoss before entering the car with May and leaving the scene. In the meantime, police officers were arriving at the scene and observed May and appellant fleeing. They were pursued and arrested.

While still at the scene of the arrest, Curtis and Browning both identified appellant as the gunman. Hilligoss had been loaded in an ambulance at the trailer park; however, the ambulance stopped at the scene of the arrest and Hilligoss identified appellant as the man who had shot him.

The gun used in the shootings was a .32 caliber automatic. The ejected shells at the scene of the shootings of both Stemle and Hilligoss were recovered and found to have been fired from the .32 caliber automatic pistol found under the passenger seat in the car in which appellant was arrested.

Later, in her hospital room, Stemle was able to identify photographs of appellant

taken shortly after his arrest as the man who had shot her. During trial, however, she stated she was unable to recognize him by reason of the extreme change in his appearance.

■ Appellant claims the trial court erred in permitting appellant's wife, Elizabeth Gordon, to testify in behalf of the State in violation of Ind.Code §§ 34–1–14–5 and 34–1–14–9. The latter statute refers to the competency of the spouse when the other is excluded from testifying and of course does not apply in this case. There is no question but what 34–1–14–5 excludes the testimony of a spouse as to information gained "as to communications made to each other." The courts have held that this statute applies only to communications arising from the confidential relationship of the marriage. *Rode v. State* (1988), Ind. App., 524 N.E.2d 797. This Court has held that acts of spouses not intended to convey a message are not covered by the statute. *Kindred v. State* (1988), Ind., 524 N.E.2d 279.

■ In the case at bar, Mrs. Gordon testified that the gun identified as the one used in the shooting was purchased by her in late December of 1990 and the last time she had seen the gun was at her sister-in-law's home on January 19, 1991. She testified that the gun was in her purse that day and shortly after 8:00 p.m. she noticed that it was gone. She also testified that her husband had been present in the house, but at the time she discovered the gun was missing he had left. She also testified that on that day she and her husband had borrowed May's car. She identified Exhibit No. 1 as a picture of Richard May and Clifford Gordon as they appeared on January 19, 1991. She also identified State's Exhibit No. 6 as a picture of her husband.

On cross-examination, she testified that police told her if she did not testify about the gun she also might be charged. Nowhere under direct or cross-examination did Mrs. Gordon allude to any communication between her husband and herself. She merely recited the fact of the ownership of the gun and that sometime around eight o'clock in the evening it had disappeared

from her purse. She did not claim to have any knowledge of how the gun got out of her purse. We see no violation of the statute in the State's questioning of Mrs. Gordon.

If we would assume for the sake of argument that the court erred in permitting Mrs. Gordon to testify, there is nothing in her direct examination by the State that contributed anything to the evidence already submitted. The gun in question had been identified as the gun that had shot both Mrs. Stemle and Mr. Hilligoss. The evidence showed that it had been recovered by the police from under the passenger seat of the car in which appellant was riding at the time he was arrested. Assuming that the jury could infer from Mrs. Gordon's testimony that appellant had taken the gun from her purse, at the most that evidence would be only cumulative of what was already before the jury. Therefore, even if we would presume error, it would be harmless. *Funk v. State* (1981), Ind., 427 N.E.2d 1081.

■ Appellant claims the trial court erred in refusing to grant a mistrial when, as Mrs. Gordon left the witness stand, appellant grabbed a water pitcher and threw it in her direction. Following that outburst and in the absence of the jury, the trial judge ordered the Sheriff to shackle appellant's hands in order to avoid possible injury to the jurors. Defense counsel argued that his client's outburst would have a tendency to prejudice the jury against him; thus it would be difficult for them to be objective in their judgment. A mistrial lies within the sound discretion of the trial judge. *Didio v. State* (1984), Ind., 471 N.E.2d 1117. It is proper for a trial judge to take those steps necessary to control an obstreperous defendant whose conduct is disruptive of the trial and to proceed with the trial under those conditions. *Illinois v. Allen* (1970), 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353. The trial court did not err in denying appellant's motion for a mistrial.

■ Appellant contends the trial court erred when it denied his motion for a severance of his trial from that of his co-defen-

dant May and the failure to grant a mistrial when after the trial had begun May entered a plea of guilty. As to the first contention, it is entirely within the discretion of the trial judge as to whether to allow co-defendants to be tried together or to separate them. *Jones v. State* (1981), Ind., 421 N.E.2d 643.

■ As to the second contention, May's plea of guilty was not entered in the presence of the jury, and because the news media was present at the plea, it of course was published in the local news media. The jurors were questioned as to whether they had read the resultant articles, each indicated they had not, and the trial judge gave an instruction to the jury to disregard the absence of co-defendant May and his attorney for the remainder of the trial.

■ Admonishment of the jury is generally presumed to cure any error unless the contrary is shown. *Hossman v. State* (1985), Ind.App., 473 N.E.2d 1059. There is no showing of any prejudice to appellant in this record. We find no error in the manner in which the trial court handled this situation.

■ Appellant claims the trial court erred in refusing his trial counsel a continuance when it appeared that defense counsel was involved in a felony jury trial in the Clark County Court at the time appellant's trial was scheduled to commence. Counsel for appellant had been appointed four months prior to trial and the date had been set for some time.

Trial counsel acknowledged that discovery had been completed. He could not point to any area in which he was unprepared for trial. There is no demonstration in this record that trial counsel did not vigorously defend his client nor is there any indication that he was unprepared in any respect. In *Keys v. State* (1979), 271 Ind. 52, 54, 390 N.E.2d 148, 150, this Court observed that under Ind. Trial Rule 53.4 [now T.R. 53.5] a continuance is "within the discretionary realm of the trial court." Further the court observed "granting continuances in order to allow more time for preparation is generally not favored in criminal cases without a showing of good cause and will only be granted in the furtherance of justice." *Id.* at 54, 390 N.E.2d at 150.

■ Denial of a continuance is reversible error only where there is a clear abuse of discretion. *Woods v. State* (1985), Ind., 484 N.E.2d 3. We see no reversible error in the refusal to grant appellant's continuance.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, DICKSON and KRAHULIK, JJ., concur.