ATTORNEYS FOR APPELLANT
Steve Carter
Attorney General of Indiana

Joby Jerrells
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE
Ellen M. O'Connor
Marion County Public Defender Agency
Indianapolis, Indiana

_____

# In the
# Indiana Supreme Court

_____

No. 49S05-0501-CR-6

STATE OF INDIANA,

*Appellant (Plaintiff below),*

v.

DOW WILSON,

*Appellee (Defendant below).*

_____

Appeal from the Marion Superior Court, No. 49G06-0302-FC-032946
The Honorable John Downer, Senior Judge

_____

On Petition To Transfer from the Indiana Court of Appeals, No. 49A05-0310-CR-526

_____

**November 2, 2005**

**Boehm, Justice.**

We hold that one spouse is not precluded from testifying in a criminal prosecution of the other.

### Factual and Procedural Background

In January 1999, Dow and Heidi Wilson, husband and wife, were approved for subsidized Section 8 housing. After the Indianapolis Housing Authority received a tip alleging that

some of the information in the Wilsons' Section 8 housing applications was fraudulent, an investigation revealed questionable items in the application, and both Dow and Heidi were charged with welfare fraud and theft. The State granted Heidi use immunity in exchange for her agreement to testify against Dow. When the State called Heidi at Dow's trial, Dow objected to her testimony on two grounds. First, he argued that the marital privilege, Indiana Code section 34-46-3-1(4), barred Heidi's testimony as to communications between them. He also contended that because he was the accused in a criminal prosecution he was not required to testify, and therefore Heidi, as his spouse, was barred from testifying by Indiana Code section 34-46-3-2. The trial court agreed with the second contention and certified the ruling for interlocutory appeal. On appeal, the Court of Appeals did not address the claim on its merits, but held that the State had waived its challenge to the exclusion of Heidi's testimony by failing to submit a proper offer of proof. State v. Wilson, 816 N.E.2d 61, 63 (Ind. Ct. App. 2004). This Court granted transfer. State v. Wilson, 831 N.E.2d 733 (Ind. 2005).

## I. Offer of Proof

Dow initially argues that the State waived its objection to the exclusion of Heidi's testimony by failing to make an adequate offer of proof as required by Indiana Evidence Rule 103(a)(2). The Court of Appeals agreed.

Dow objected to Heidi's testimony at trial on the ground of marital privilege and also on the ground that she was barred from testifying altogether. The State responded:

> I think for one this is a little premature, because they don't know if our questions are even going to ask about spousal communication, which I'm not sure that they will. I think our questions are going to be more directed as to, "Ms. Wilson, on January 19th of 1999, did you go to the office of Housing Authority and put in an application for Section 8 rent? Who accompanied you there?" That is not spousal communication. So, I think this is premature in that they haven't heard the questions, yet. We haven't asked a question that's relating to marital privilege. We're going to ask Ms. Heidi Davie Wilson what she did on a certain date and who was with her.

Dow claimed that Heidi, as Dow's spouse, was precluded from testifying against him irrespective of the subject matter of her testimony. As to that claim, the only requirement of an offer of proof is that it indicate the relevance of the offered testimony and that it would not vio-

late some rule of evidence such as hearsay.  An offer ordinarily should explain the witness's expected testimony, not the questions to be asked.  However, in the case at hand, the only issues were relevance and whether Heidi's testimony would invade a privilege.  It was clear from the context that the State intended to show that Dow and Heidi applied for Section 8 housing together and that Heidi's testimony was to establish that fact.  The State's explanation was sufficient to show its relevance and that Heidi's account of who was with her was admissible under the Rules of Evidence.

Dow also raised an objection based on marital privilege, which protects only confidential communications.  As to that claim, in addition to relevance and competence of the witness, the offer of proof should show that no privilege would be invaded.  Whether Heidi accompanied Dow at the time of the application and who else was present do not call for communications at all, so the State's explanation was enough to show that it did not seek to elicit any confidential communications.  The offer was therefore sufficient as to both objections.

The purpose of an offer of proof is to convey the point of the witness's testimony and provide the trial judge the opportunity to reconsider the evidentiary ruling.  Baker v. State, 750 N.E.2d 781, 785-86 (Ind. 2001) (quoting 1 McCormick on Evidence § 51, at 217 (John W. Strong et. al., 5th ed. 1999)).  Equally important, it preserves the issue for review by the appellate court.  Id.  To accomplish these two purposes, an offer of proof must be sufficiently specific to allow the trial court to determine whether the evidence is admissible and to allow an appellate court to review the correctness of the trial court's ruling and whether any error was prejudicial.  1 McCormick, supra, at 218.

The Court of Appeals, applying language from this Court's decision in Hilton v. State, 648 N.E.2d 361 (Ind. 1995), found the State's offer insufficient.  Hilton first noted that an offer of proof should indicate the facts sought to be proved and establish the "competency, and relevancy of the evidence offered."  Id. at 362 (citing Tope v. State, 266 Ind. 239, 362 N.E.2d 137, 142 (1977), cert. denied, 434 U.S. 869 (1977)).  We agree with this general formulation.  However, Hilton went on to find the offer of proof in that case insufficient because it "lack[ed] specificity and fail[ed] to establish such material facts as when the conversation took place, where the conversation took place, and who was present at the time."  Id.  Hilton also questioned the offer

3

in that case on the ground that "Hilton phrase[d] his offer of proof 'I believe,' and he fail[ed] to adequately assure the court that the offer truly represent[ed] the substances of [the] testimony." Id. We think this language from Hilton must be reconsidered.

The language in Hilton that would require time and place and other details overstates the requirements for an adequate offer of proof. An offer of proof should show the facts sought to be proved, the relevance of that evidence, and the answer to any objection to exclusion of the evidence. Details that are immaterial to the ultimate facts are not necessary. Where and when a conversation took place ordinarily are irrelevant to any issue before the court. In this case the date and other persons present were not critical to any issue before the court. To the extent Hilton suggests they are generally required it is disapproved.

We also disapprove the language from Hilton suggesting that an offer of proof must vouch for the anticipated testimony. There is nothing wrong with an offer of proof that prefaces the proffered testimony with "We expect the witness to testify that . . ." or "I believe." The attorney making an offer of proof must have a good faith and reasonable belief that the witness will testify as the attorney states, but the attorney is not a warrantor of the witness's reliability and should not vouch for the witness. Indeed, many attorneys have endured witnesses who changed their stories on the stand from the version they had given the attorney under circumstances where the attorney had no reason to question the original version until the witness recanted on the stand.

Finally, we observe that, as explained in State v. Glover, ___ N.E.2d ___ (Ind. 2005), the privilege can be waived by either Heidi, as the testifying spouse, or by Dow. Even if the information was potentially privileged, we assume Heidi's plea agreement may have committed her to waive any marital privilege issue. In any event, if that is not the case, we assume she expected to waive the privilege by testifying without asserting it. The offer of proof was sufficient to preserve these issues for appeal.

## II. The Marital Privilege

Dow contends that the marital privilege prevents his wife from testifying to the events surrounding the application. Dow's contention relies on Indiana Code section 34-46-3-2 which

is grounded in statutory language first introduced in the 1998 recodification of hundreds of sections of the Indiana Code. We reject his contention, although we agree that the language of the new statute seems to support it.

A. *The Pre-1998 Statutory Provisions*

In 1997 only two statutory provisions addressed husband and wife as witnesses. The first, the marital privilege appeared along with other statutory privileges in a single section of the chapter entitled "Witnesses" in the "Civil Code of 1881" article of the Indiana Code. This statute was couched in terms of competence, not privilege. See Indiana Code § 34-1-14-5 (Burns Code Ed. Repl. 1997). It provided: "Except as otherwise provided by statute, the following persons *shall not be competent witnesses*: . . . (5) Husband and wife, as to communications made to each other." Id. (italics supplied). Subsections (1) through (4) identified attorney/client, physician/patient, and other privileges, all prefaced by the "shall not be competent witnesses" lead-in.

Although the statute referred to husbands and wives as being incompetent witnesses as to "communications made to each other" it was long held that this section created a privilege, not a disqualification of the witness. It protected only confidential communications between spouses, and did not prevent a spouse from testifying as to any other matter.[1]

Before the 1998 recodification, the "Witnesses" chapter of the article entitled "Civil Code of 1881" also included a Competency Statute. Indiana Code section 34-1-14-9 (Burns 1986) provided "[w]hen the husband or wife is a party, and not a competent witness in his or her own behalf, the other shall also be excluded." This language had been applied only in will disputes, cases involving the dead man's statute, and actions by a husband for the seduction of his wife. It

---

[1] See, e.g., Gordon v. State, 609 N.E.2d 1085, 1087 (Ind. 1993) (State's questioning of defendant's wife regarding ownership and disappearance of gun used in charged shootings did not violate the marital Privilege Statute); Kindred v. State, 524 N.E.2d 279, 296 (Ind. 1988) (acts of spouses not intended to convey a message are not covered by the statute); Perkins v. State, 483 N.E.2d 1379, 1383 (Ind. 1985) (no privilege exists for a communication "intended to be transmitted to a third person"); Holt v. State, 481 N.E.2d 1324, 1326 (Ind. 1985) (no privilege existed due to the lack of confidentiality); Shepherd v. State, 257 Ind. 229, 232-33, 277 N.E.2d 165, 167 (1971) (an exception to the rule of privilege as to communications between spouses is when the offense charged was committed by one against the other); Hazelwood v. State, 609 N.E.2d 10, 15 (Ind. Ct. App. 1993), trans. denied, (information communicated a month before the marriage was not included within the martial privilege); Gifford v. Gifford, 58 Ind. App. 665, 673, 107 N.E. 308, 311 (1914) (statement by husband relating to business transaction which was not intended to be private did not come within the privilege).

was typically used to prohibit the spouse of a party from testifying as to any matter that occurred during the lifetime of the incompetent spouse.[2]  The Court of Appeals had specifically rejected the claim that the Competency Statute prevented a wife from testifying against a husband in his criminal trial.  In Merry v. State, 166 Ind. App. 199, 335 N.E.2d 249 (1975), trans denied, the defendant claimed he was not a competent witness for the State by reason of his self-incrimination privilege.  The court held that although Merry had the right to assert the privilege, he was not an incompetent witness and therefore his wife was not barred by the Competency Statute.  Id. at 260.  Similarly, in Gordon v. State, 609 N.E.2d 1085 (Ind. 1993), the defendant in a criminal case argued that the trial court erred in permitting his wife to testify as to non-confidential communications.  We held that the Competency Statute "refers to the competency of the spouse when the other is excluded from testifying" and did not apply because the defendant was not claiming that he was incompetent.  Id. at 1087.

In short, the law prior to the 1998 Recodification did not support Dow's contention that his wife could not testify.  The offer to prove established that no privilege barred the testimony.  And, "[i]n contrast to the slow evolution of the law with regard to privilege in the federal system, Indiana long ago abolished the rule of absolute spousal incompetence in favor of a narrow privilege encompassing only confidential communications and information gained by reason of the marital relationship."  State v. Roach, 669 N.E.2d 1009, 1011 (Ind. Ct. App. 1996) (citing Shepherd v. State, 257 Ind. 229, 277 N.E.2d 165 (1971); Smith v. State, 198 Ind. 156, 152 N.E. 803 (1926); Vukodonovich v. State, 197 Ind. 169, 150 N.E. 56 (1926)).

B.  *The 1998 Recodification*

As a result of the 1998 Recodification, the Privilege Statute became section 1 of a newly created chapter entitled "Privileges of Attorneys, Physicians, Clergymen, and Spouses" in a new "Privileged Communications" article.  As before recodification, the marital privilege was included as a subsection of this section that addressed all forms of privileged communications.  As explained below, in recognition of the settled law that this section provided for privileges, not disqualifications to testify, the recodified version adopted privilege language, abandoning the pre-recodification competency terminology:  "Except as otherwise provided by statute, the fol-

---

[2] See, e.g., Taylor v. Taylor, 643 N.E.2d 893, 896 (Ind. 1994); Lee v. Schroeder, 529 N.E.2d 349, 353 (Ind. Ct. App. 1988), trans. denied; Bechert v. Lehe, 161 Ind. App. 454, 457, 316 N.E.2d 394, 397 (1974).

6

lowing persons shall not be *required to testify regarding the following communications*: . . . (4) Husband and wife, as to communications made to each other." I.C. § 34-46-3-1(4) (italics supplied).

The recodification placed the Competency Statute, without any change of language, in the chapter entitled "Competent and Incompetent Witnesses." I.C. § 34-45-2-9. Recodification also mysteriously generated a second version of the Competency Statute translated into privilege terminology. The recodification thus retained both of the former sections and also introduced a new third provision. This third provision is similar to the former Competency Statute, but adopted the same language change that was properly done in the Privilege Statute, i.e. substituting "not required to testify" for "not a competent witness." This new provision appeared as section 2 in the "Privileges of Attorneys, Physicians, Clergymen, and Spouses" chapter. Indiana Code section 34-46-3-2 thus now provides: "When the husband or wife is a party, and not required to testify in his or her own behalf, the person's spouse shall also be excluded." The trial court held that, pursuant to this third provision, because Dow is not required to testify in his criminal trial, Heidi was also excluded.

The State argues that this new statute, Indiana Code section 34-46-3-2, is merely a re-codification of the Competency Statute, former Indiana Code section 34-1-14-9 (Burns 1986). Dow responds that current Indiana Code section 34-45-2-9 is a verbatim recodification of the former Competency Statute. There is therefore logic to Dow's claim that the new section 2 of the Privilege chapter must be something other than a restatement of the old Competency Statute. And Dow argues persuasively that the language of this third provision is clear and susceptible to only one interpretation: if a party in a lawsuit is not required to testify, that person's spouse is not allowed to testify.

On its face this new statute does just what Dow claims. As a defendant in a criminal case, Dow is "not required to testify in his own behalf." And it is hard to give any meaning to the term "shall be excluded" other than a declaration that Dow's wife cannot testify. Ordinarily the clear meaning of the language of a statutory provision is the end of the analysis. Bolin v. Wingert, 764 N.E.2d 201, 204 (Ind. 2002). We nevertheless conclude that this new section effected a substantial change in the law and is in conflict with other provisions of the 1998 Recodi-

7

fication Act. Dow's interpretation of section 34-46-3-2 would permit the defendant in many domestic abuse cases to prevent the only witness—his wife, the victim in the case—from testifying. We think it highly unlikely the legislature would have intended such a result. But we do not rely on our supposition as to the aim of the legislature. This provision popped up for the first time in a recodification and would effect a substantial and irrational change in the law. This new section 2 is not simply a recodification of the old Competency Statute. As already explained, the language now appearing in 34-46-3-2 was newly minted in the recodification process, and the Competency Statute was recodified elsewhere. Before 1998 there were two statutes addressing the role of a spouse as a witness, and now we have three. Thus, the question is whether recodification created a new separate privilege which would grant defendant spouses the ability to keep their spouses from testifying as to anything if the defendant spouse was not required to testify in his or her own behalf. The history of this provision confirms that it was, to put it simply, a mistake in recodification. At least under these unusual circumstances, the new section must be rejected as in conflict with provisions in the 1998 Recodification Act that no new law was created. Cf. Burd Mgmt., LLC v. State, 831 N.E.2d 104, 108 (Ind. 2005).

In 1997 the Indiana Code Revision Commission was considering a proposal to consolidate and update statutory provisions relating to witnesses. The Commission focused on the point we have already noted that the Privilege Statute in Indiana was couched, incorrectly in modern usage, in terms of the competence of the witness. The Commission correctly concluded, that substitution of the term "required to testify" for "competent" would not change the law under the Privilege Statute. The change would simply reflect the doctrine the courts had long embraced: communications between attorney/client, physician/patient, clergyman/penitent and husband/wife were privileged. So far, so good. The Commission's staff was then directed to consolidate the provisions from the "Witness" chapter in a new article to be entitled "Privileged Communications." At that point, for reasons not visible to the naked eye, the Competency Statute was retained in its original form in the "Competent and Incompetent Witnesses" chapter, and not only the 1881 Privilege Statute (now I.C. § 34-46-3-1), but also a revised version of the Competency Statute (now I.C. § 34-46-3-2) appeared in the new "Privileged Communications" article. The entire debate of the issue by the Commission, and the "Discussion" memo of the Indiana privilege law furnished to the Commission, seem to have focused solely on the Privilege Statute and its incorrect usage of competency terminology. The Commission was apparently un-

8

aware that translating the Competency Statute into "privilege" language would effect a substantial change in the law. It thus appears that the insertion of a new statute, highly unusual in a recodification act, was the result of an overly enthusiastic adoption of the principle that the marital Privilege Statute should be rephrased in terms of privilege rather than competency.

The legislature has told us how to handle this apparently bizarre result. Indiana Code section 34-7-1-1 sets out the "Purpose" of the 1998 Recodification Act. It provides that the Act is intended to recodify existing law, not to change it. Specifically, with an exception not relevant here,[3] this section provides that "the substantive operation and effect of prior civil law and procedure continue uninterrupted."[4] Dow argues that this "Purpose" provision in the 1998 Recodification Act should be of no effect in this case because it conflicts with the language of the statute. Dow contends that when there is an irreconcilable conflict between the body of an act and a Purpose provision, the Purpose provision should be rejected. In this case we think the reverse is

---

[3] The complete language of this section is:

> The purpose of the recodification act of the 1998 regular session of the general assembly is to recodify prior civil law and procedure in a style that is clear, concise, and easy to interpret and apply. Except to the extent that:
> (1) the recodification act of the 1998 regular session of the general assembly is amended to reflect the changes made in a provision of another bill that adds to, amends, or repeals a provision in the recodification act of the 1998 regular session of the general assembly; or
> (2) the minutes of meetings of the code revision commission during 1997 expressly indicate a different purpose;
> the substantive operation and effect of the prior civil law and procedure continue uninterrupted as if the recodification act of the 1998 regular session of the general assembly had not been enacted.

[4] Shortly before oral argument in this case, the State submitted the minutes of the Code Revision Commission as additional authority. In submitting this additional authority, the State pointed out that the 1998 Recodification Act should be construed to effect no changes unless the minutes make that intention clear. The State points out that no such change was intended. Dow moved to strike the State's submission of additional authority, arguing that the additional authority was in fact an attempt to raise a new issue not presented to the trial court or Court of Appeals. Dow argues that although the State has previously alleged that the statute at issue was not a "new" statute "it had never previously argued, before the trial court or to the Court of Appeals, that any 'Savings Clause' [referring to the "Purpose" section] explicitly prevented legislative creation of a heretofor[e], nonexistent statutory privilege." While it is true, as Dow seems to argue, that grounds of error must first be raised in an appellate brief and cannot be raised initially in a reply brief or later, we do not think the State has raised a new argument. As Dow admits, the State argued in its appellate brief that the statute is not a new statute, but merely a recodification of an older statute. The State's submission of additional authority merely bolsters the contention that because the statute is not new, but part of a recodification, it should not be interpreted any differently than the former statute. In any event, this Court is familiar with the recodification process and can, and did, do its own legal research.

true—the aberration is ineffective because it conflicts with the "Purpose" provision of the Recodification Act. The Recodification Bill, P.L. 1-1998, was 534 pages long and included hundreds of provisions on a wide variety of subjects. Recodifications are passed by the legislature in reliance on the technical skills of the Commission on Recodification and its staff, and on the provision in the first section of the Recodification that it will do no harm. The legislature was explicit in providing that no change in substantive or procedural law was intended, and we think this provision should be honored. Because the preexisting law was accurately preserved in other provisions, Indiana Code section 34-46-3-2 is an invalid extension of pre-recodification law and is of no effect.

## Conclusion

The ruling of the trial court precluding Heidi from testifying is reversed. This case is remanded for proceedings consistent with this opinion.

Shepard, C.J., and Dickson, Sullivan, and Rucker, JJ. concur.