**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**LISA M. JOHNSON**
Brownsburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GARY R. ROM**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| JOSEPH BAREFIELD, | ) |
| | ) |
| Appellant-Defendant, | ) |
| | ) |
| vs. | ) No. 49A05-1210-CR-528 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Plaintiff. | ) |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Carol J. Orbison, Judge
Cause No. 49G22-1103-FB-18623

**June 20, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Joseph Barefield appeals his convictions for three counts of Class B felony sexual misconduct with a minor. We affirm.

**Issues**

Barefield raises four issues, which we reorder and restate as:

I. whether the trial court properly excluded certain evidence;

II. whether the prosecutor's closing argument resulted in fundamental error;

III. whether the evidence is sufficient to support his convictions; and

IV. whether his convictions for Count II and Count III violate double jeopardy.

**Facts**

In November 2010, fourteen-year-old K.T. spent the night before Thanksgiving at her sister's apartment in Indianapolis. Her sister lived with her boyfriend, Barefield, who was twenty-seven. That night, while her sister was in the bedroom, Barefield began talking to K.T. about sexual experimentation. Barefield asked K.T. to sit on his penis, which she did while she was clothed. The two then went into the dining room, K.T. sat on a chair, and Barefield put his penis in K.T.'s mouth. Barefield then got a condom from the kitchen, asked K.T. to put her hands on the dining room table, pulled her pants and underwear down, and put his penis in her vagina "[a] little bit[.]" Tr. p. 44. Barefield told K.T. that her vagina was "too tight." Id. He also rubbed his penis against her anus. When K.T.'s sister came out of the bedroom, Barefield and K.T. pulled their

2

pants up. Barefield went outside, and K.T. sat on the couch. K.T.'s sister went back to the bedroom, and K.T. went with Barefield to buy cigarettes. While in the car, Barefield told K.T. that he was not finished and that he wanted to pull over, and she told him no. The two went back to the apartment and went to bed.

K.T., her sister, and Barefield spent Thanksgiving with family and, several days later, K.T. reported the incident to her mother. K.T.'s mother took K.T. to a hospital, and the incident was reported to police.

On March 21, 2011, the State charged Barefield with three counts of Class B felony sexual misconduct with a minor, Class C felony sexual misconduct with a minor, and Class D felony child solicitation. A jury found Barefield guilty as charged. The trial court did not enter convictions on the Class C felony sexual misconduct with a minor charge or the child solicitation charge. Barefield now appeals.

**Analysis**

*I. Exclusion of Evidence*

During K.T.'s cross-examination, defense counsel asked K.T., "[d]id you miss a lot of school?" Tr. p. 122. The prosecutor objected, and the trial court sustained the objection. On appeal, Barefield argues that exclusion of this evidence was legally incorrect and violated his right to cross-examine K.T. and his right to present a defense. In his brief, Barefield asserts, "[i]f K.T. had been permitted to answer the question, the anticipated response would have been that she missed more than a month of school due to her allegations against Barefield." Appellant's Br. p. 38. Barefield suggests that most children would perceive a month away from school as a substantial benefit and that,

3

because of the trial court's erroneous ruling, the jury never knew K.T. gained this benefit and was left with the false impression K.T. gained nothing by her accusations.

Barefield, however, did not make an offer of proof at trial. On appeal, Barefield argues in a footnote that the issue is properly preserved because the substance of the excluded testimony was presented to the trial court in a post-trial motion to modify bond. In that motion, Barefield asserted in a footnote that, during trial, defense counsel attempted to solicit cross-examination testimony from K.T. about her "missing more than a month of school as a result of her making the allegations in this case despite the complete absence of any medical reason for her to miss school." App. p. 121. Barefield argues that this presentation of the purported testimony serves the primary purpose of an offer of proof because it makes the substance of the excluded evidence known to this court.

"The purpose of an offer of proof is to convey the point of the witness's testimony and provide the trial judge the opportunity to reconsider the evidentiary ruling." State v. Wilson, 836 N.E.2d 407, 409 (Ind. 2005). "Equally important, it preserves the issue for review by the appellate court." Id. "To accomplish these two purposes, an offer of proof must be sufficiently specific to allow the trial court to determine whether the evidence is admissible and to allow an appellate court to review the correctness of the trial court's ruling and whether any error was prejudicial." Id.

Because the purported offer of proof was not made until after trial in a motion to modify bond, the trial court was not given an opportunity to rule on the admissibility of the excluded testimony in the context it was offered at trial. The offer of proof was

untimely, and this issue is waived.  See Dowdell v. State, 720 N.E.2d 1146, 1150 (Ind. 1999).

## II.  Prosecutorial Misconduct

Barefield argues that several statements made by the prosecutor during closing argument rose to the level of prosecutorial misconduct.  As Barefield acknowledges, he did not object to the comments, and his claims are only reviewable for fundamental error.  Specifically:

> If a defendant properly raises and preserves the issue of prosecutorial misconduct, then the reviewing court determines (1) whether the prosecutor engaged in misconduct, and if so, (2) whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected. Where a claim of prosecutorial misconduct has not been properly preserved, our standard for review is different from that of a properly preserved claim.  More specifically, the defendant must establish not only the grounds for the misconduct but also the additional grounds for fundamental error.  Fundamental error is an extremely narrow exception that allows a defendant to avoid waiver of an issue.  It is error that makes "a fair trial impossible or constitute[s] clearly blatant violations of basic and elementary principles of due process . . . present[ing] an undeniable and substantial potential for harm."

Coleman v. State, 946 N.E.2d 1160, 1166-67 (Ind. 2011) (alteration in original) (citation omitted).

## A.  Facts Not in Evidence

During closing argument, the prosecutor stated, "he then tells her to get up and put her hands on the table.  So this is not something that a 14-year-old child would do unless she was being told by someone who is grown and has done these sorts of things before . .

5

. .” Tr. p. 211. According to Barefield, the prosecutor was asking the jury to infer that K.T. was sexually inexperienced, which was contrary to K.T.'s own testimony. In support of this argument, Barefield relies on K.T.'s testimony that Barefield told her he knew she was not a virgin and that he told K.T. that her sister told him K.T. was not a virgin. See id. at 40, 76. This testimony, however, establishes only that Barefield believed K.T. was not a virgin. It does not establish, as Barefield argues, "that K.T. was familiar with sexual acts." Appellant's Br. p. 28. Barefield has not shown that this comment is an improper reference to facts not in evidence.

### B. Future Crimes

Barefield contends that the prosecutor improperly suggested that he would commit future crimes if he was not convicted. The prosecutor stated, "You know he's going to wait for another opportunity. That's going to come next, right? So good thing she finally tells before she gets back over there." Tr. p. 215. Taken in context, however, this line of argument was based on the ongoing nature of the relationship between K.T. and Barefield. The prosecutor was suggesting that K.T. was not inclined to report the incident because she did not want to hurt her sister and that Barefield had continued access to K.T. Further, this line of argument is consistent with the evidence that, while in the car with K.T. shortly after committing the offenses, Barefield propositioned K.T. again. When taken in context, we do not believe that the prosecutor was urging to the jury to convict Barefield because of his propensity to commit future crimes. Even if it was improper to suggest that Barefield might have committed another offense if K.T. had

6

not reported the incident, we do not believe this brief comment amounted to fundamental error.[1]

## C. Reference to Jerry Sandusky

Barefield also objects to the prosecutor's argument that the crimes could have occurred even while K.T.'s sister was in the other room. The prosecutor stated, "And the other sister is in the room there. Jerry Sandusky was molesting children down in his basement. Jerry Sandusky was molesting children in a gym, in a shower." Id. at 215-216. As the State points out, these two references were part of the prosecutor's twenty-two page closing argument and were not a central theme of the argument, and Barefield agrees that Sandusky was not a central theme of the State's closing argument. Further, the jury was instructed that the attorneys' unsworn statements were not evidence and that the verdict should be based on the law and the facts, not sympathy or prejudice. "[A] trial court's jury instructions are presumed to cure any improper statements made during trial." Guy v. State, 755 N.E.2d 248, 258 (Ind. Ct. App. 2001), trans. denied. Under these circumstances, these references did not constitute fundamental error.

## D. Misstatement of the Law

Barefield contends that the prosecutor misstated the law when she argued, "[w]e talked about this in jury selection the uncorroborated testimony of a single eyewitness and if you belief [sic] her testimony, then he's guilty." Tr. p. 216. The prosecutor went on to explain why there was no reason to disbelieve K.T.'s testimony. In context, the

---

[1] As part of this argument, Barefield objects to the prosecutor's argument that the jury not "walk" Barefield because K.T. was not the perfect victim, did not tell right away, and because there was not DNA evidence. Tr. p. 225. We fail to see how this implies Barefield will commit future crimes.

7

prosecutor was explaining that K.T. was a credible witness and that her testimony alone could support a guilty verdict. Even if it was a misstatement of the law, the jury was instructed on the burden of proof, and Barefield does not challenge the manner in which the jury was instructed. Because a trial court's jury instructions are presumed to cure any improper statements made during trial, Barefield has not shown fundamental error. See Guy, 755 N.E.2d at 258.

### E. Misstatement of the Evidence

Barefield argues that, in a calculated effort to mislead the jury, the prosecutor misstated K.T.'s testimony. On direct examination, K.T. testified that, after Barefield put his penis in her mouth, she got something in her mouth and she "spit it out and wiped it on [her] shirt." Tr. p. 43. When asked, "what did you wipe on your shirt; your mouth or what was in your mouth?", K.T. answered, "[w]hat was in my mouth." Id. On cross-examination, K.T. clarified that she spit onto the floor and wiped her mouth on her shirt. See id. at 93-94, 96. There was extensive testimony about K.T. spitting on the floor.

In her rebuttal, the prosecutor discussed K.T.'s cross-examination testimony about spitting and wiping her mouth as follows:

> And then she tells you, and this is important, an important detail, after she was drilled for an hour and twenty minutes by defense counsel she still tells you, I spit it on the floor. If it's a science fiction tale, and in science fiction tales you get to decide the facts yourself, if you're telling a lie, you decide the facts that you're going to tell to make your story better. Why does she say she spit anything out at all? Why doesn't she just say she swallowed it so there's an excuse for no evidence to be there?

8

> But what did she say:  I spit it on the floor and then I rubbed my mouth on my shirt.  And when he asked her, why did you do that, her exact words:  It was a reaction.
>
> She didn't say, I wiped what was in my mouth on my shirt.  She was wearing a capped-sleeved short shirt.  Tr. p. 230.

This argument accurately reflected K.T.'s cross-examination testimony and, even when considering K.T.'s direct examination testimony, there is no indication that this argument was calculated effort to mislead the jury in light of the entirety of K.T.'s extensive testimony on this point.

### F.  Failure to Testify

Barefield also argues that the prosecutor implicitly commented on his failure to testify when she referenced K.T.'s testimony about Barefield telling her that he and a friend experimented with each other sexually so they would not get their feelings hurt. The prosecutor stated:

> [K.T.] told you that he told her a story about him and a friend as a teenager.  Isn't that something that could be refuted? Why make that up, why make that up?  She didn't have to say that she was talking—she didn't have to say that he talked about anything personal to him.  It would have been much easier to say that he just came out and said, hey, [K.T.], I want to do some sexual things with you.  But she told you the details of information that was personal to him, that she would not know about, had he not said those things to her.

Id. at 228.  Barefield argues that, because the only way to refute this story was for him to testify, the prosecutor was improperly inviting the jury to draw an inference from his failure to testify.  See Moore v. State, 669 N.E.2d 733, 739 (Ind. 1996) ("The Fifth Amendment privilege against compulsory self-incrimination is violated when a

prosecutor makes a statement that is subject to reasonable interpretation by a jury as an invitation to draw an adverse inference from a defendant's silence.").

We disagree that this statement would be reasonably interpreted by a jury as an invitation to draw an adverse inference from Barefield's silence. Instead, in context, the prosecutor was trying to show that K.T.'s testimony was credible because of the details it included and that, if K.T. was making up the allegations, she would not have included unnecessary details that could have exposed her as a being untruthful. This argument is unavailing.

### G. Hearsay

During her testimony, K.T. testified that she told her boyfriend and a friend about the incident soon after it happened. In his closing argument, defense counsel questioned why the State did not call K.T.'s boyfriend and friend to testify about what K.T. told them. In her rebuttal, the prosecutor asserted:

> Throughout this trial, you have heard an objection to hearsay. And you have heard both sides say you can only testify to personal knowledge. You can't say what someone else has said and you heard the judge sustain those objections. So [K.T.'s boyfriend] couldn't tell you what [K.T.] told him because of the Rules of Evidence. [K.T.'s friend] couldn't do that….

Tr. p. 232.

Barefield contends that this argument was misleading and inaccurate because not all out-of-court statements are subject to exclusion, and he suggests that these witnesses could have testified to K.T.'s prior consistent statements to rebut the allegation of recent fabrication. See Lovitt v. State, 915 N.E.2d 1040, 1043 (Ind. Ct. App. 2009) (analyzing

10

Ind. Evidence Rule 801(d)(1)(B)). Even if the prosecutor's assessment of the admissibility of K.T.'s boyfriend's and friend's testimony was not accurate, "[p]rosecutors are entitled to respond to allegations and inferences raised by the defense even if the prosecutor's response would otherwise be objectionable." Dumas v. State, 803 N.E.2d 1113, 1118 (Ind. 2004). Because this assessment of the admissibility of the testimony was in response to defense counsel's argument, Barefield has not established that this argument amounted to fundamental error.

### H. Comments about Defense Counsel

Barefield argues that the prosecutor made "disparaging and inappropriate comments about defense counsel's legitimate challenges to K.T.'s credibility." Appellant's Br. p. 33. Barefield references the prosecutor's suggestion that it is not fair to ask children to report sex offenses and then call them liars when they do and the suggestion that defense counsel put K.T. on trial. In making these arguments, it is clear the prosecutor was addressing Barefield's theory of the case—that K.T. had fabricated the allegations. Although the prosecutor attempted to refute the allegation that K.T. was lying, she did not personally attack defense counsel or otherwise make disparaging remarks about him. This argument fails.

### I. Cumulative Error

Barefield argues that the cumulative effect of the prosecutor's inappropriate comments resulted in fundamental error. We disagree. K.T.'s testimony regarding the offenses was unequivocal. To the extent the prosecutor's various arguments amounted to misconduct, if at all, they, either individually or collectively, were relatively minor in the

11

context in which they were offered and did not make a fair trial impossible or constitute clearly blatant violations of basic and elementary principles of due process.

### III. Sufficiency of the Evidence

Barefield argues there is insufficient evidence to support his convictions. When reviewing a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor assess the credibility of witnesses. Bailey v. State, 979 N.E.2d 133, 135 (Ind. 2012). We view the evidence—even if conflicting—and all reasonable inferences drawn from it in a light most favorable to the conviction and affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. Id.

Barefield argues that K.T.'s uncorroborated testimony is not reliable enough to support a finding of guilty beyond a reasonable doubt. In making this argument, Barefield relies on a dissenting opinion suggesting "that it is time to consider whether we should require corroborating evidence when these type of offenses are supported only by the testimony of a single witness." Leyva v. State, 971 N.E.2d 699, 705 (Ind. Ct. App. 2012), (Baker, J., dissenting), trans. denied. As our supreme court has recently restated, however, "[a] conviction can be sustained on only the uncorroborated testimony of a single witness, even when that witness is the victim." Bailey, 979 N.E.2d at 135; see also Hoglund v. State, 962 N.E.2d 1230, 1238 (Ind. 2012) ("The testimony of a sole child witness is sufficient to sustain a conviction for molestation."). Despite Barefield's challenge to his conviction resting on K.T.'s uncorroborated testimony alone, our supreme court's precedent is binding until it is changed by our supreme court or

12

legislative enactment.  Culbertson v. State, 929 N.E.2d 900, 906 (Ind. Ct. App. 2010), trans. denied.

K.T. unequivocally testified that Barefield put his penis in her mouth, in her vagina, and against her anus.  This testimony is sufficient to support the Class B felony sexual misconduct with a minor convictions.  See Ind. Code § 35-42-4-9(a)(1) (defining Class B felony sexual misconduct with a minor a person at least twenty-one years of age who, with a child at least fourteen years of age but less than sixteen years of age, performs or submits to sexual intercourse or deviate sexual conduct).  Barefield's various challenges to K.T.'s credibility include that he would not jeopardize his relationship with K.T.'s sister,[2] that K.T.'s sister would have seen him committing the offense when she came out of the bedroom, that K.T. could have awoken her sister or used her phone to call for help, that K.T. would not have voluntarily gotten in the car with Barefield after he committed the offenses, and that there is no physical, medical, or scientific evidence to corroborate her testimony.  These arguments, however, were made at trial and were available for the jury's consideration when assessing K.T.'s credibility.  We cannot and will not reweigh the evidence or reassess a witness's credibility.  The evidence is sufficient to support the convictions.

### IV.  Double Jeopardy

Barefield argues that his convictions for Count II and Count III violate Article 1, Section 14 of the Indiana Constitution as set forth in Richardson v. State, 717 N.E.2d 32

---

[2]  This argument is based largely on citations to transcripts of post-trial proceedings, including the sentencing hearing and a hearing on a no-contact order.  This evidence is not relevant to our consideration of the sufficiency of the evidence presented to the jury at trial.

13

(Ind. 1999). "To show that two challenged offenses constitute the same offense under the actual evidence test, 'a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense.'" Spivey v. State, 761 N.E.2d 831, 832 (Ind. 2002) (quoting Richardson, 717 N.E.2d at 53). Application of the actual evidence test requires us to identify the essential elements of each of the challenged crimes and to evaluate the evidence from the jury's perspective, considering where relevant the jury instructions, argument of counsel, and other factors that may have guided the jury's determination. Id. Under the Richardson actual evidence test, the Indiana Double Jeopardy Clause is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense. Id. at 833.

Count III was based on Barefield engaging in sexual intercourse with K.T. Sexual intercourse is defined as, "an act that includes any penetration of the female sex organ by the male sex organ." I.C. § 35-31.5-2-302. Count II was based on Barefield performing deviate sexual conduct involving his penis and K.T.'s anus. Deviate sexual conduct is defined in part as an act involving a sex organ of one person and the mouth or anus of another person. I.C. § 35-31.5-2-94. Barefield claims there is a reasonable probability that the jury relied on the same evidence to find Barefield guilty of Counts II and III. We disagree.

K.T. testified that Barefield tried to put his penis in her vagina but could not because "it was too tight." Tr. p. 44. She stated that his penis went inside her vagina "[a]

14

little bit[.]" Id. She also testified that Barefield did not try to put his penis anywhere else but did "rub it against [her] anus." Id. She described it as the outside of her anus. She said that Barefield tried to put his penis in her vagina for five minutes and that he stopped when her sister came out. On cross-examination K.T. again testified to the intercourse and, when asked if anything else happened, she stated, "He kind of wiped—like he kind of wiped his penis on my anus." Id. at 103-04. She then reconfirmed this testimony and stated that this happened when her sister came out of the bedroom. During closing argument, the prosecutor clearly distinguished between the two offenses and the jury instructions defined each count separately by referring to sexual deviate conduct involving the Barefield's sex organ and K.T.'s anus in Count II and to sexual intercourse in Count III.

Based on K.T.'s testimony, the closing arguments, and the manner in which the jury was instructed, a clear distinction was made between Count II and Count III. There is not a reasonable possibility the jury relied on the same evidence to find Barefield guilty of Counts II and III.

Barefield also appears to argue that common law double jeopardy principles prohibit multiple convictions for acts committed within moments of each other as part of one incident. See Watkins v. State, 575 N.E.2d 624, 625 (Ind. 1991). Assuming this line of cases is based on common law double jeopardy principles and is still valid after

Richardson,[3] K.T.'s testimony described two distinct acts—the slight penetration of her vagina and the wiping of his penis against her anus. Barefield has not established that common law double jeopardy principles were violated.

**Conclusion**

There is sufficient evidence to support the convictions. Barefield has not established that any alleged prosecutorial misconduct resulted in fundamental error, either individually or collectively. Barefield waived any error based on the exclusion of K.T.'s testimony about missing school because he did not make a timely offer of proof. Barefield has not established that his convictions violate constitutional or common law double jeopardy principles. We affirm.

Affirmed.

NAJAM, J., and BAILEY, J., concur.

---

[3] Barefield cites a line of cases decided before Richardson, which rely on the rationale in Ellis v. State, 528 N.E.2d 60 (Ind. 1988) and Hansford v. State, 490 N.E.2d 1083 (Ind. 1986). Richardson, however, expressly superceded Ellis and Hansford. See Richardson, 717 N.E.2d 49 at n.36.